*LESSEE OF ZIBA LINDSLEY v. ARTHUR COATS. [243

*Decided at Columbus, by all the Judges.*

Legal title to real estate could not be acquired by parol before the statute of frauds.

THIS was an action of ejectment, tried before the Supreme Court, in Athens county, 1823, upon an appeal by the defendant from a verdict and judgment rendered against him in the common pleas.

The facts of the case were these: The defendant, and one Timothy Wilkins, under whom the lessor of the plaintiff derived title, were owners of leases for ninety-nine years, renewable forever, of part of the college lands, in Athens county. In the year 1807, the defendant, Coats, and Timothy Wilkins, agreed by parol to exchange the lands they owned, and each gave up to the other possession according to the agreement. Coats had remained in possession of the premises thus obtained by exchange, which are the same for which the suit is brought, ever since. It was part of the contract that deeds should be executed between them, but it was never done. Upon the trial, in the Supreme Court sitting in Athens county, the plaintiff relied upon the legal title. The defendant gave evidence of the contract of exchange, and the possession acquired under it. The court, Judges Pease and Sherman, charged the jury that the agreement by parol, and the possession acquired under it, could not be set up at law to defeat the legal title of the plaintiff. A verdict was found for the plaintiff. The defendant moved for a new trial, upon the ground of jurisdiction, and this motion was reserved for decision by all the judges.

EWING, in support of the motion:

At common law an exchange, without livery of seizin, transferred real estate when the lands lay in the same county, and such exchange, *by parol*, was good. Littleton, sec. 62-65, and Coke thereon, C. L. 50, 51; and see Shepherd's Touchstone, title Exchange. This mode of exchange was done away in Eng-

land by the statute of frauds, 29 Charles II., 63 Hargraves' Notes, N. 126.

No English statutory provisions have ever been of force in this state or territory, except by the provisions of the territorial law of 1795, which adopts the common law of England and the statute made in aid thereof to the 4th of James I.—no farther. Until long after that time a parol exchange was good in England.

244] *The law, in that respect, is in nowise affected by the ordinance of Congress, which was temporary in its provision, and, in that particular, to exist only until the governor and judges should adopt laws. 8 Stat. Laws, 619. The law of 1805, vol. 8, p. 398, which provides for the execution and acknowledgment of deeds, does not declare, nor can it be inferred from its provisions, that lands shall not be conveyed otherwise than by deed. If it do, it defeats, at least, our other common law estate (that by curtesy), which, I believe, is not recognized in any of our previous statutes. It may be said that the mode of transferring real property by parol is not suited to our state of society. This is true, and was a good reason for legislative interference, but could not, without that interference, alter the rule of law.

No argument was presented on the other side.

By the COURT :

The lessor of the plaintiff produced a regular title to the lands in controversy, from the university at Athens, under whom the same was held.

The defendant gave evidence, that in the year 1807 (anterior to the enactment of the statute of frauds), an agreement by parol was entered into by him and one Timothy Wilkins, the then owner of the lands in dispute, and through whom the plaintiff deduces title to exchange the same for lands of the defendant, also held under the university, situate in the same county ; and that each party to the contract went into possession of the lands so obtained by exchange. The court instructed the jury that the parol exchange accompanied with possession did not vest in the defendant the legal estate in the land. A new trial is sought for, on the ground that this direction was incorrect. It is contended by the defendant that, at common law, a parol exchange of lands situate in the same county, accompanied with possession, transfers the legal

estate without livery of seizin; and that at the time when this exchange was made, there was no statute law of the state requiring contract of or concerning lands to be in writing.

By the common law, a parol exchange of lands situate in the same county, was good, provided each party went into possession of the lands acquired by such exchange; but if the lands were situate in different counties, or either party died before going into possession, such parol exchange was void. Shep. Touch. 294; Lit., sec. 51, 52, 62. Nor was livery of seizin necessary to perfect such exchange, for each had already corporal possession of his land.

*This was one of the ancient common law modes of trans- [245 ferring real estate, adopted at a time when writing was practiced or understood but by few individuals.

It has been repeatedly determined by the courts of this state that they will adopt the principles of the common law as the rules of decision, so far only as those principles are adapted to our circumstances, state of society, and form of government. In no instance have the ancient common law modes of conveyance, as such, been adopted in this state; and long anterior to the settlement of this country, they had given way to the comparatively modern mode of assurance by deeds of lease and release, bargain and sale, etc. There is nothing in our circumstances or state of society that would seem to require the adoption of a principle so pregnant with mischief as that the title to real estate might rest in and be evidenced by parol only.

The policy of all our laws respecting lands is opposed to such a principle. Without attempting to enumerate the different acts of the legislature applicable to this subject, it may be said that from the first organization of the government to the present time, it has been the policy of our laws that the title to real estate should be matter of record, subject to the inspection of every individual interested. The uniform custom of giving and receiving deeds upon all sales and transfers of real estate has been in accordance with this policy; and this is believed to be the first instance in which an attempt has been made to sustain a legal title to lands resting only in a parol contract.

The policy of law, the custom of our country, the danger of perjury, and the many inconveniences that must necessarily result from the establishment of the principle contended for by the defendant, would, in the absence of all legislative provision upon the

subject, require us to declare that the exchange claimed by the defendant did not transfer to him the legal title to the land in controversy; and that no contract evidenced only by parol, though accompanied with possession or livery of seizin, would vest in the purchaser, a legal estate in, or legal title to lands.

The court, however, do not deem it necessary to determine this cause upon the principles of the common law, as applicable to our circumstances and state of society; as we are of opinion that at the time when the exchange relied on in this case took place, there were statutory provisions in force, regulating the conveyance of real estate.

The ordinance for the government of the territory of the United **246]** *States, northwest of the river Ohio, passed July 13, 1787, after providing that the governor and judges shall adopt such laws of the original states as they may deem best suited to the circumstances of the district, subject to the approval of Congress, provides, "that until the governor and judges shall adopt laws, real estate may be conveyed by lease and release or bargain and sale, signed, sealed, and delivered by the person, being of full age, in whom the estate may lie, and attested by two witnesses."

The ordinance provides for the conveyance of real estates, and points out the manner in which such conveyances may be made by deed duly executed, thereby clearly excluding all parol conveyances of land, under whatever circumstances they may be made, or with whatever solemnities attended—*expressio unius est exclusio alterius.* It evidently was not the intention of Congress merely to legalize those modes of conveyance which are mentioned in the ordinance, leaving it at the option of owners of real estate within the territory, upon the sale of their lands, to convey the same either by the ancient common law mode of feoffment, with livery of seizin, or by deed duly executed; but to provide that every conventional transfer of real estate by vendor to vendee should be evidenced only by deed. And this opinion is strengthened by the provision of the ordinance that "personal property may be transferred by delivery," and by the clause saving to the French and Canadian inhabitants, in certain parts of the territory, "their laws and customs now in force among them, relative to the descent and conveyance of property."

The governor and judges, in 1795, executed the powers vested in them by the ordinance, and adopted a law directing the manner

of executing, proving, and acknowledging deeds, as well as providing for recording them.   In 1802 the territorial legislature made further provisions upon this subject, and gave effect to deeds for lands in the territory where such deeds were made out of the state, but executed and proved or acknowledged in the manner prescribed by the laws of the state where made, and recorded in the county where the land lies.

The provisions of these laws are substantially enacted in the act of 1805, which provides for the whole subject of executing, acknowledging, proving, and recording deeds, and directs, among other things, that the deed shall be recorded in the county where the land lies.

None of these acts provide, in express terms, that land shall only *be conveyed by deed; but they are all evidently framed on [247 the hypothesis that real estate can not be transferred by parol. The latter act contains many provisions which can be neither literally nor substantially complied with, if a parol conveyance be effectual in law to vest a legal estate.   Such (for example) is the provision that conveyances, whereby any lands, tenements, or hereditaments shall be affected in law or in any manner incumbered, shall be recorded.   It is claimed that the exchange proved in this case, accompanied as it was with possession, amounts to a conveyance of the estate in the lands exchanged; and if it can have any legal effect, it must be as a conveyance of the estate, and, as such, must, by the positive enactment of the statute, be recorded.   Yet it is, in its very nature, incapable of being recorded.

The care of the legislature, in providing in each county an officer for the recording of deeds of real estate, in providing for the formal execution of such deeds, and in requiring them to be acknowledged before some judicial officer, is idle and vain, if a mere parol conveyance, necessarily unaccompanied with these formalities, will vest in the purchaser a valid legal estate.

Admitting, then, as contended for by the defendant, that that part of the ordinance which points out the mode of conveying real estate, had ceased to be effectual by the act of the governor and judges of 1795, made *in pari materia*, being a substantial compliance with the provision which limits its duration to the time of the governor and judges' adopting of laws, yet its provisions are substantially re-enacted in the act of 1805, which was in force when this exchange of lands was made.   The ordinance was the first of

a series of legislative acts respecting the transfer of real estate, and its provisions, with little variation, have been incorporated into all subsequent statutes. We are satisfied that, upon a fair construction of the legislative acts in force at the time the parol exchange, relied upon by the defendant, was made, no conveyance would pass a valid legal title to real estate, except such conveyance were by deed. If the defendant acquired any interest in the land in dispute, by the exchange with Wilkins, it is an equitable and not a legal interest, and his right must be asserted in a different manner and before another tribunal. It can not avail him as a defense in the action of ejectment, when the legal title to the land in controversy is in the lessor of the plaintiff.

The motion for a new trial must be overruled.