## GEORGE WELLS v. PETER H. FLOODY.[1]

March 29, 1923.

No. 23,308.

**Existence of contract sustained by evidence.**

 1. The evidence sustains the finding of the court that the plaintiff entered into a contract with the defendant to perform specified services at an agreed compensation.

**Contract with defendant void as against public policy.**

 2. A contract with one threatened with an indictment for a criminal offense whereby he agrees to investigate, or to get evidence, and to present the results of his work to the prosecuting officers in support of a contention that the prosecution should not be continued is valid. A contract contemplating the suppression of an investigation of the crime alleged, or the withholding of evidence of it, or the abandonment of the prosecution through persuasion or personal solicitation or influence, is against public policy as obstructing or tending to obstruct public justice. The contract between the plaintiff and the defendant is invalid within the rules stated.

Action in the municipal court of St. Paul to recover balance of $200 for services rendered. The case was tried before Finehout, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From an order denying his motion for judgment in his favor notwithstanding the findings or for a new trial, defendant appealed. Reversed.

*McGrath & Morse*, for appellant.

*A. J. Hertz*, for respondent.

DIBELL, J.

This is an action to recover for services rendered by the plaintiff at an agreed compensation. There were findings for the plaintiff. The defendant appeals from the order denying his motion for a new trial.

[1]Reported in 192 N. W. 939.

1. The plaintiff claims that he performed services for the defendant under a contract by which he was to receive $300. The defendant denies such a contract. The court might have found for one or for the other. Its finding for the plaintiff is sustained.

2. The question for us is whether the contract, taking it to be as the plaintiff claims it, is void as against public policy. There was no writing, and its terms must be gathered from the testimony and what concededly was done in performance of it.

The first paragraph of the complaint alleges that the defendant employed the plaintiff to assist in the preparation of his defense in a criminal prosecution instituted or about to be instituted against him by the government. The second paragraph, as amended at the trial, alleges:

"That this plaintiff accepted said employment, and after a thorough investigation of the facts and the presentation of the same, by numerous interviews with the United States department of justice, succeeded in inducing the said United States department of justice in not indicting this defendant."

The plaintiff was an experienced and successful detective and investigator. He had been captain of detectives in St. Paul. He had served in the United States marshal's office. The defendant was a locomotive engineer. The two were old time friends. The defendant in the early part of 1921 claimed that certain liberty bonds and other property had been stolen from him by a woman named Wilson, who, it may be gathered from the record, had come from another state and had been his housekeeper. She was arrested and acquitted. Floody was soon under investigation by the Federal authorities, apparently at the instigation of this woman, for a violation of the Mann act. He called for the plaintiff who had advised him in the criminal prosecution against the woman. The plaintiff says:

"Mr. Floody called me again and says, 'I am in more serious trouble than ever; I want you to come down right away.' I came down, and I met him—we met by appointment on Cedar Street— Mr. Floody will remember it well, and he told me, 'the department of justice is going after me.' "

Floody also told the plaintiff that the police woman of St. Paul was getting active in the case. Again the plaintiff says:

"When he called me down and told me he was in more serious trouble, that the department of justice was going after him, he says, 'George, I know you have done a whole lot for me; if I am not indicted I will give you $300.' He says, 'I don't want to lose my pension; I am entitled to a pension from the Brotherhood in eleven months from now, and I am entitled to a pension from the railroad, and it means ruin to me.' And I eased him up and told him I didn't think he would be indicted, and that I told the department of justice fellows that if they pressed this case against him, knowing as I did that it was a blackmailing scheme from a vicious woman on a good, conscientious man, that I would go to Washington and present what I knew about the case to the attorney general at Washington."

The plaintiff says he talked with the police woman of St. Paul "to keep her from going up there and telling what she knew about his past, which she was doing," and that he talked with the attorney of the Wilson woman "to have this woman lay off of Floody." Her attorney, a witness for the plaintiff, testified as follows:

"Q. Mr. Wells suggested I ask you if he didn't also argue with you upon the matter on the ground that Mr. Floody was a citizen here and a taxpayer, and it was almost your duty as an attorney to see, unless you were absolutely satisfied of the guilt of Mr. Floody, that no prosecution be begun against him because of the publicity and trouble.

"A. Yes, Mr. Wells made an appeal to me upon those grounds, not to take any action, or at least to use my influence with Mrs. Wilson to have her not to make any criminal charge against Mr. Floody, for the reasons substantially as you have put them, as I recall it. He stated, among other things, that Mr. Floody was an old resident here and had a good reputation; wife had died some time before—I don't remember, three or four years, something like that—and during the time of her life that he had always been steady and industrious; since her death he got mixed up with this woman;

that I ought not to permit Mrs. Wilson, if I could prevent it, making a charge against Mr. Floody that would cause him to lose his position and possibly be convicted of a crime."

The plaintiff talked with the Federal officers in charge of the investigation. Floody says that when he told the plaintiff that a prosecution for a violation of the Mann act was threatened he said: "Well, I will go right up to the office with you and tell them where to head in at." And that he talked with them, and, so he thinks, the officers did not like it and were moved to further and immediate inquiry.

One who is under an investigation which may result in an indictment may present to the investigating officers evidence tending to show that he is not guilty of an offense, and that the prosecution is without foundation or constitutes blackmail. He may hire another, lawyer or layman, to investigate and present the results of his investigations, or to get and present evidence, and to make arguments based on such investigations or such evidence, to the end that an indictment will not be presented, and that the prosecution be ended. A contract to do service of this kind for one accused offends no public policy of the state. But a contract whereby one undertakes to suppress the investigation of a crime charged, or to induce the withholding of evidence bearing upon it, or by persuasion or personal solicitation or the use of personal influence to induce public officers not to prosecute, is within the condemnation of the law as against public policy in that it actually obstructs or tends to obstruct public justice. Weber v. Shay, 56 Oh. St. 116, 46 N. E. 377, 37 L. R. A. 230, 60 Am. St. 743; Barron v. Tucker, 53 Vt. 338, 38 Am. Rep. 684; Rhodes v. Neal, 64 Ga. 704, 37 Am. Rep. 93; Quirk v. Muller, 14 Mont. 467, 36 Pac. 1077, 25 L. R. A. 87, 43 Am. St. 647; Wright v. Rindskopf, 43 Wis. 344; 13 C. J. 448, 449; 6 R. C. L. 758, 759. A like rule applies to contracts to induce legislation. Contracts which contemplate no more than the presentation of arguments in favor of legislation are not forbidden; but contracts contemplating personal solicitation and the use of personal influence offend public policy. Hazelton v. Sheckells, 202 U. S. 71, 26 Sup. Ct. 568, 50 L. ed. 939, 6 Ann. Cas. 217; Tool Company v. Norris, 2

Wall. 45, 17 L. ed. 868; Marshall v. Baltimore & O. R. Co. 16 How. 314, 14 L. ed. 953; Adams v. East Boston Co. 236 Mass. 121, 127 N. E. 628; Houlton v. Dunn, 60 Minn. 26, 61 N. W. 898, 30 L. R. A. 737, 51 Am. St. 493. No case closely like the one before us is cited. It is within the controlling principle of the cases cited. That Floody was not guilty is of no consequence; nor is Wells' belief in his innocence. It is not important that there was not a wicked or corrupt purpose; or that a result thought right was to be accomplished; or that the work done was a friendly service such as one commonly does for another without censure. The tendency of the contract is such that the law declines aid.

The brief of appellant concedes that compensation was contingent upon success. Whether such contingency renders the contract illegal is a question the decision of which is not essential to a determination of this case. Where compensation is sought for services in securing legislation from Congress, the fact that compensation is contingent upon a favorable outcome makes the contract against public policy and void. Hazelton v. Sheckells, 202 U. S. 71, 26 Sup. Ct. 567, 50 L. ed. 939, 6 Ann. Cas. 217. In Manufacturers Bureau v. Everwear, 152 Wis. 73, 138 N. W. 624, 42 L. R. A. (N. S.) 847, Ann. Cas. 1914C, 449, a contract whereby the plaintiff was to furnish men to do service in detecting theft in the defendant's plant, the compensation being contingent upon conviction, was held void in that its tendency was to obstruct public justice. And see Ormerod v. Dearman, 100 Pa. St. 561, 45 Am. Rep. 391; 13 C. J. 448; note 4 L. R. A. (N. S.) 212; note 30 L. R. A. 737. In Moyer v. Cantiney, 41 Minn. 242, 42 N. W. 1060, a contract to secure a pardon, the compensation dependent upon success, was sustained. The considerations deemed important by the court in that case are not controlling here. We do not decide the effect of the contingency of compensation.

Order reversed.