Colorado Court of Appeals Opinions || September 24, 2015


Colorado Court of Appeals -- September 24, 2015
2015 COA 133. No. 14CA0281. Rademacher v. Becker.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 133

 
 



 Court of Appeals No. 14CA0281
 Boulder County District Court No. 12CV856
 Honorable Bruce D. Langer, Judge


 Carol Rademacher,

 Plaintiff-Appellee,

 v.

 John Becker, Trustee of the John E. Becker Trust,

 Defendant-Appellant.


 JUDGMENT REVERSED AND CASE
 REMANDED WITH DIRECTIONS

 Division V
 Opinion by JUDGE TERRY
 RomÃ¡n and Ashby, JJ., concur

 Announced September 24, 2015


 St. Clair & Greschler, P.C., Ira E. Greschler, Dipak P. Patel, Boulder, Colorado, for Plaintiff-Appellee

 Dietze and Davis, P.C., Joel C. Maguire, Boulder, Colorado, for Defendant-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  In this suit brought by plaintiff, Carol Rademacher, to collect on a promissory note, defendant, John Becker, Trustee of the John E. Becker Trust and obligor on the note, appeals the judgment in favor of plaintiff entered after a jury trial.

 Â¶2Â Â Â Â Â Â Â Â  The note was executed as part of a settlement agreement between the parties. Defendant argues that the settlement agreement and note are unenforceable. It is undisputed that, although the note and agreement were entered into partly to settle a civil claim, they were also executed as consideration for plaintiffâs agreement â as the alleged victim of a crime committed by defendantâs wife, Ms. Becker â to seek leniency in Ms. Beckerâs sentencing.

 Â¶3Â Â Â Â Â Â Â Â  As an issue of first impression in Colorado, we conclude that a private agreement in which influence over a criminal prosecution is exchanged for the payment of money â or, here, the promise to pay money â is void as against public policy. We therefore reverse the judgment and remand to the trial court to dismiss the action.

 I. Background

 Â¶4Â Â Â Â Â Â Â Â  For approximately ten years, defendant and plaintiff were involved in an extramarital relationship. Things came to a headÂ when defendantâs wife, Ms. Becker, confronted plaintiff. Ms. Becker threw coffee on plaintiff and kicked over the chair plaintiff was sitting in.

 Â¶5Â Â Â Â Â Â Â Â  Plaintiff contacted the police and, as a result, Ms. Becker was criminally charged with assault. Plaintiff submitted a victimâs impact letter asking that Ms. Becker be prosecuted to the full extent of the law. After negotiating with plaintiff, defendant entered into a settlement. As part of the settlement, plaintiff agreed not to pursue any claims against Ms. Becker or defendant and to ask the Boulder District Attorneyâs office to offer Ms. Becker a deferred sentence. In exchange for these promises, defendant executed a $300,000 promissory note payable to plaintiff. At the same meeting where the settlement agreement was signed, plaintiff signed a letter to the District Attorney indicating her desire that Ms. Becker be offered a deferred sentence.

 Â¶6Â Â Â Â Â Â Â Â  Defendant made payments on the note totaling approximately $25,000 and then stopped paying. After plaintiff sent defendant a demand letter and notice of acceleration of the note, defendant sent an additional check for $10,000, but made no further payments on the note. Plaintiff filed this suit to enforce the note, and the juryÂ found for plaintiff. The trial court denied defendantâs post-trial motion for judgment notwithstanding the verdict.

 II. Public Policy

 Â¶7Â Â Â Â Â Â Â Â  Defendant contends that the trial court erred in denying his motion for judgment notwithstanding the verdict because the settlement agreement and note are void as against public policy. We agree.

 Â¶8Â Â Â Â Â Â Â Â  As an initial matter, we reject plaintiffâs argument that we should decline to address defendantâs contention of voidness based on public policy. The courts may not assist a party in enforcing a contract serving an illegal purpose. See Feiger, Collison & Killmer v. Jones, 926 P.2d 1244, 1252 (Colo. 1996). Therefore, we elect to review the issue.

 A. Standard of Review

 Â¶9Â Â Â Â Â Â Â Â  We review de novo a trial courtâs ruling on a motion for judgment notwithstanding the verdict. Vaccaro v. Am. Family Ins. Grp., 2012 COA 9, Â¶40. We also review de novo the trial courtâs ruling as to whether the note and settlement agreement are void. See Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1045 (Colo.Â 2011); Adams Reload Co., Inc. v. Intâl Profit Assocs., Inc., 143 P.3d 1056, 1058 (Colo. App. 2005).

 B. Applicable Law

 Â¶10Â Â Â Â Â Â Â Â  Colorado courts will not enforce a contract that violates public policy. Russell v. Courier Printing & Pub. Co., 43 Colo. 321, 325, 95 P. 936, 938 (1908). This rule does not exist for the benefit of the party seeking to avoid contractual obligations, but instead serves to protect the public from contracts that are detrimental to the public good. Id. at 325-26, 95 P. at 938.

 Â¶11Â Â Â Â Â Â Â Â  Whether a contract violates public policy is determined based on the particular facts of the case. See Bailey, 255 P.3d at 1045 (citing Russell, 43 Colo. at 326, 95 P. at 938). Colorado appellate courts have looked to various sources to discern public policy. Those sources include statutory law, see Bailey, 255 P.3d at 1045 (looking to insurance statutes to determine whether insurance provision violates public policy); Pierce v. St. Vrain Valley Sch. Dist. RE-1J, 981 P.2d 600, 604 (Colo. 1999) (looking for âlegislative directionâ to determine public policy), and the common law of the various states, see, e.g., Salzman v. Bachrach, 996 P.2d 1263, 1267-68 (Colo. 2000) (collecting cases from other jurisdictions andÂ noting that most jurisdictions now enforce contracts between cohabitants previously considered void as against public policy). Cf. Martin Marietta Corp. v. Lorenz, 823 P.2d 100, 109 (Colo. 1992) (in context of public-policy exception to employment-at-will doctrine, policy must be âclearly expressed statutory policyâ to satisfy required element that employer had notice of public policy).

 C. Discussion

 1. The Promissory Note Was in Consideration of Influencing Criminal Prosecution

 Â¶12Â Â Â Â Â Â Â Â  We begin by analyzing the nature of the partiesâ agreement. In most respects, the written settlement agreement appears typical of agreements settling civil claims. The agreement recites that defendant paid $300,000 to settle any civil claims plaintiff might have had against defendant or Ms. Becker, and says:

 [Plaintiff] shall not pursue any claims against [Ms. Becker] and [defendant] and shall to the best ability [sic] request that others not pursue claims against [Ms. Becker] or [defendant] on her behalf. [Plaintiff] shall hold [Ms. Becker] and [defendant] harmless from any and all civil claims which may be brought by any third party [arising from the assault incident].

 In the only explicit reference to Ms. Beckerâs criminal proceedings, the agreement states that defendantâs payment of $300,000 is in addition to any criminal restitution that might be ordered.

 Â¶13Â Â Â Â Â Â Â Â  But at oral argument, counsel for both plaintiff and defendant acknowledged that part of the consideration for the settlement payment was the settlement of the pending criminal matter. This acknowledgment is supported by the evidence at trial.

 Â¶14Â Â Â Â Â Â Â Â  The parties presented extensive trial testimony about the settlement negotiations to explain the reasons for the agreement and consideration given outside the written agreement. No issue has been raised about the parol evidence rule, and because a major portion of the consideration for the agreement is reflected in the partiesâ oral side agreement, we are guided in our decision by the partiesâ undisputed testimony and the surrounding circumstances. See E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co., 109 P.3d 969, 973-75 (Colo. 2005); see also Lazy Dog Ranch v. Telluray Ranch Corp., 965 P.2d 1229, 1236 (Colo. 1998); Pepcol Mfg. Co. v. Denver Union Corp., 687 P.2d 1310, 1314 (Colo. 1984) (â[W]hen a contract or agreement has been given a practical construction, as reflected by the conduct and acts of the parties inÂ its performance, such construction may, and perhaps even should, be considered by the court in eliminating any ambiguity . . . .â).

 Â¶15Â Â Â Â Â Â Â Â  Undisputed evidence showed that one of the primary reasons why defendant entered into the agreement was to get plaintiff to influence the Boulder District Attorneyâs office to agree to a deferred sentence in the criminal case against Ms. Becker. Plaintiff had earlier submitted a victimâs impact statement to the district attorneyâs office, explaining that she wished Ms. Becker to be prosecuted to the full extent of the law. Although defendant and plaintiff had been negotiating about a possible settlement for months, plaintiff testified that âthere seemed to be an accelerationâ after she sent the impact letter because the âletter caused a lot of fracus [sic].â Plaintiff further testified that defendant made a âbeginning offer,â after which she called her attorney and said that

 [she] need[ed] to promise [defendant] that [she would] not sue him, [she would] not sue [Ms. Becker], [she would] write a different letter â these are all things [defendant] demanded of [her]. [She] had to write another letter back to the DA, . . . totally rescinding [her earlier victimâs impact statement], asking for the least possible sentence.Â 

 Â¶16Â Â Â Â Â Â Â Â  Undisputed evidence showed that at the same time and place the settlement agreement was signed, plaintiff also signed a letter addressed to the District Attorneyâs office, stating:

 To Whom It May Concern,

 It is my understanding that Ms. Becker has been offered a plea agreement under which she would plead guilty to third degree assault, be on probation for 18 months (supervised), have anger management evaluation and treatment, pay restitution, [and] have no contact with me, and [that] your office will not review the case for a possible felony charge.

 I agree to allow [Ms. Becker] to plead guilty subject to the conditions previously offered with a deferred sentence as requested by Ms. Beckerâs attorney. I understand that the plea will not modify my existing restraining order.

 Plaintiff testified that defendant âwanted [the letter] delivered that day,â and she continued, âthis statement had to be made.â She said the letterâs purpose was âto satisfy [defendant] that [she] offset [her] impact statement.â The record shows that the letter was received by the District Attorneyâs office.

 Â¶17Â Â Â Â Â Â Â Â  We conclude that a significant purpose, if not the primary purpose, of the settlement agreement was to secure plaintiffâsÂ influence in achieving leniency for Ms. Becker in the criminal assault proceeding.

 2. Does the Partiesâ Agreement Concerning the Criminal
 Prosecution Violate Public Policy?

 Â¶18Â Â Â Â Â Â Â Â  Next, we consider whether the partiesâ agreement is void as against public policy. We conclude that the public policy of Colorado, as expressed in our statutory law, precludes the enforcement of the promissory note, and we agree with the policy expressed in the case law of numerous sister states that enforcement of an agreement that conditions payment on the influence or hindrance of a criminal case is void as against public policy. See Pierce, 981 P.2d at 604 (looking for âlegislative directionâ to determine public policy); see also Salzman, 996 P.2d at 1267-68 (looking to common law of other states to help determine public policy to be adopted in Colorado).

 a. Public Policy as Expressed in Colorado Statutory Law

 Â¶19Â Â Â Â Â Â Â Â  In our view, section 18-8-703, C.R.S. 2015, reflects a public policy to prohibit the influence of criminal prosecutions. That statute makes it a crime to bribe or confer any benefit on a victim orÂ witness of a crime with the intent to influence the victim or witness to testify falsely or to withhold any testimony.

 Â¶20Â Â Â Â Â Â Â Â  We do not mean to suggest that this statute is applicable here; rather, we view the statute as an expression of a public policy to discourage the giving of money or other consideration to improperly affect criminal proceedings. See, e.g., Bailey, 255 P.3d at 1046 (noting that, even where statutes are not applicable to insurance policy provisions at issue, the statutes âpartly show[] . . . âa strong public policy in favor of protecting tort victimsââ (quoting Friedland v. Travelers Indem. Co., 105 P.3d 639, 646 (Colo. 2005))).

 b. Common Law of Other Jurisdictions

 Â¶21Â Â Â Â Â Â Â Â  The parties do not cite any Colorado case, and we have found none, that addresses whether a contract, in which money is paid to secure influence over a criminal proceeding, is void as against public policy. However, other jurisdictions that have considered the issue have determined that such agreements violate public policy.

 Â¶22Â Â Â Â Â Â Â Â  The policy is best expressed by Ensminger v. Burton, 805 S.W.2d 207, 217 (Mo. Ct. App. 1991), which states, â[a] contract made with the purpose and upon the consideration that a criminalÂ prosecution shall be suppressed, stifled or stayed, will not be enforced.â

 Â¶23Â Â Â Â Â Â Â Â  The following cases from other jurisdictions have reached the same conclusion, as to enforceability of both settlement agreements and promissory notes, even where only part of the payment was in consideration of hindering criminal proceedings:

 
 Jones v. Trump, 971 F. Supp. 783, 788 (S.D.N.Y. 1997) (â[A]greements to refrain from assisting with a criminal prosecution violate public policy by undermining societyâs criminal laws.â).

 
 Wilson v. Singer Sewing Mach. Co., 214 Ala. 536, 538, 108 So. 358, 359 (1926) (promissory note held void for illegality where partial consideration for note was agreement to suppress criminal prosecution).

 
 Zerbetz v. Alaska Energy Ctr., 708 P.2d 1270, 1283 (Alaska 1985) (If part of a contract is held void as against public policy, and the void provision is an essential part of the agreed exchange, âthe court cannot be sure that in that provisionâs absence the parties would have agreed at all[,and in] that case the court should not enforce what remains of the agreementâ).

 
 Hanley v. Savannah Bank & Trust Co., 68 S.E.2d 581, 582 (Ga. 1952) (ââIf an agreement binds the parties or either of them to do, or if the consideration is to do, something opposed to the public policy of the state or nation it is illegal and absolutely void, however solemnly made.ââ (quoting 17 C.J.S., Contracts Â§ 211 at 563 and adding emphasis)).

 
 Franklin v. White, 493 N.E.2d 161, 165 (Ind. 1986) (âAgreements tending to impede the regular administration of justice are void as against public policy . . . . Contracts which unduly tend to influence the production or suppression of evidence are void.â); Ricketts v. Harvey, 78 Ind. 152, 154 (1881) (âIt is the duty of every person to exercise his influence in favor of the due enforcement of the criminal laws of the State, and no agreement to withhold such influence, or to employ it in such manner as to affect such prosecution, will be enforced.â).

 
 Wells v. Floody, 192 N.W. 939, 940 (Minn. 1923) (â[A] contract whereby one undertakes . . . by . . . the use ofÂ personal influence to induce public officers not to prosecute, is within the condemnation of the law as against public policy in that it actually obstructs or tends to obstruct public justice.â).

 
 Ream v. Sauvain, 43 P. 982, 983 (Kan. Ct. App. 1896) (where note was payable partly in consideration of settlement of civil liability and partly in consideration of stifling criminal prosecution, note was held void).

 
 Atwater v. Sellers, 239 N.W. 629, 629 (Neb. 1931) (âAll agreements relating to proceedings in the courts, civil or criminal, which may involve anything inconsistent with the full and impartial course of justice therein, are void as against public policy.â).

 
 Aycock v. Gill, 111 S.E. 342, 343-44 (N.C. 1922) (note in exchange for interceding with court to induce leniency violated public policy).

 
 Wheelock v. Commercial Natâl Bank, 8 Ohio N.P. 627, 627 (1888) (a contract based on suppression of criminal proceedings is illegal; the parties entering into the contractÂ are in pari delicto, and neither party can have relief against the other).

 
 Sholer v. State ex rel. Dep't of Pub. Safety, 149 P.3d 1040, 1047 (Okla. Civ. App. 2006) (where the primary purpose of the contract was to effectuate an illegal act, and the parties would not have entered into the contract without the illegal portions of the agreement, the agreement was void in toto).

 
 Prim v. Farmersâ Natâl Bank, 44 S.W.2d 943, 945 (Tex. Commân App. 1932) (where promise to forbear prosecution was part of consideration for note, note contravened public policy and was illegal and unenforceable); McNeese v. Carver, 89 S.W. 430, 432 (Tex. Civ. App. 1905) (same).

 
 Bowen v. Buck, 28 Vt. 308, 315 (1856) (a private person may not use criminal prosecution for purpose of inducing settlement of a private claim for private loss or injury).



 c. Application of Public Policy to the Facts

 Â¶24Â Â Â Â Â Â Â Â  Given the strong public policy expressed in Colorado statutory law, and the common law of our sister states, we conclude that, because at least part of the consideration for execution of the settlement agreement and promissory note here was given in anÂ attempt to hinder or stifle the plenary prosecution against Ms. Becker, the entire agreement and promissory note are void.

 Â¶25Â Â Â Â Â Â Â Â  The policy at issue is the publicâs interest in a fair system of criminal justice. See Wells, 192 N.W. at 940. The criminal justice system is subverted when influence outside âthe open and public modes of argument and evidenceâ is purchased with the promise of a pecuniary return. Aycock, 111 S.E. at 344 (âA party cannot . . . pollute the very fountains of criminal justice by suppressing an indictment already instituted against him.â). These concerns are heightened when the party whose influence is purchased is the alleged crime victim, because such a personâs influence carries exceptional weight with the court. Id.

 Â¶26Â Â Â Â Â Â Â Â  We reject plaintiffâs arguments that we should find no public policy violation here. First, plaintiff argues that there was no such violation because the contract was not based on a threat of prosecution, but instead on an offer of influence for leniency. As we have discussed above, the problem is with the exchange of money to influence a victimâs or witnessâs conduct in a criminal proceeding; the nature of the influence exerted is a secondary consideration. Second, plaintiff asserts that â[t]here is nothing prejudicial to theÂ interests of justice . . . for a crime victim to change her position on the impact of a crime after the perpetrator voluntarily makes restitution.â Any such policy considerations are inapplicable here. Plaintiff did not choose to change her position after receiving a unilateral and voluntary restitution; she negotiated and sold her change of position.

 Â¶27Â Â Â Â Â Â Â Â  We conclude that an agreement in which money or other valuable consideration is paid in exchange for a crime victimâs efforts to obtain leniency in connection with a criminal charge is void as against Colorado public policy. Because the record on this issue is undisputed, and unequivocally shows that a major part of the consideration for defendantâs note and agreement to the settlement was based on plaintiffâs agreement to attempt to influence the criminal prosecution, we declare the settlement agreement and the note to be void as against public policy.

 Â¶28Â Â Â Â Â Â Â Â  We recognize that defendant specifically negotiated for plaintiffâs cooperation in the criminal proceeding, and that an argument can be made that he should not benefit from voiding of the settlement agreement and note. However, the court cannot be a party to enforcing such a void agreement, regardless of who mightÂ benefit from its invalidation. See Russell, 43 Colo. at 325-26, 95 P. at 938 (âIt does not sound well for a defendant to say that a contract which he deliberately entered into, and of which he had had the benefit, is void because contrary to public policy; but it is not for his sake, or for his protection, that the objection is allowed, but for the protection of the public, by thus preventing this character of contracts being made, and avoiding evils which naturally result therefrom.â).

 III. Other Arguments

 Â¶29Â Â Â Â Â Â Â Â  Because we reverse on grounds of public policy, we do not address defendantâs other arguments.

 IV. Attorney Fees

 Â¶30Â Â Â Â Â Â Â Â  Plaintiff requests that, if she is successful on appeal, we require defendant to pay attorney fees as a sanction for filing a frivolous appeal. We deny plaintiffâs request because we have determined defendantâs appeal to be meritorious.

 V. Conclusion

 Â¶31Â Â Â Â Â Â Â Â  The judgment is reversed, and the settlement agreement and the note are determined to be unenforceable as a matter of law. We remand to the trial court to dismiss the action.

 JUDGE ROMÃN and JUDGE ASHBY concur.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 24, 2015


Back