## ASA T. BARRON v. WILLIAM H. TUCKER.

### Illegal Consideration.

The consideration of a *contract* must not only be *valuable*, but *lawful;* hence, there can be no recovery by one for his time and services, the purpose and tendency of whose employment was to obstruct the administration of justice, by influencing State witnesses, and by inducing the State's attorney to hold back in the discharge of his official duty in prosecuting the defendant charged with adultery.

THIS case was heard at the December Term, 1880, TAFT, J., presiding. Judgment for the defendant, on the report of a referee. The referee found:

PLAINTIFF'S SPECIFICATION.

" Dec. 1873. To livery and expense in case, *State* v.
William H. Tucker,                                      $22.00
    To personal services in same,                       28.00
                                                        ————
                                                        $50.00

In August, 1873, the defendant was held to bail by a justice of the peace in $800, on a grand juror's complaint for adultery. About the time of the session of the court, in December, 1873, the defendant applied to the plaintiff to assist him in the matter of said prosecution ; and he agreed to. The parties thereupon sat down to mature a plan of operation." The referee also found that it was talked over between the parties, and believed by them, that the plaintiff would have influence with the State's attorney of Windsor County, as they were " great friends " and on " intimate terms "; that the State's attorney could be influenced by the plaintiff, " in his official conduct of said prosecution in a manner favorable to the defendant." . . . . . " It was further agreed that plaintiff should go to West Hartford, the venue of the alleged crime, and the recent, (and if not then,) place of the defendant's residence as well as the residence of the State witnesses, and pretend to be there for the purpose of buying lumber and produce,—articles in which the plaintiff was accustomed to deal, that his real business might not be suspected, —and see what he could do there by way of talking with the State witnesses and other citizens, and thus getting up a sympathy for defendant there, and of ' toning down,' to use

the plaintiff's words, ' the feeling against the defendant there,' and was very persistent in his effort to induce him to *nol. pros.* the case. He tried him on the score of the friendly relations existing between them ; tried him by attempting to make him believe that the evidence was not sufficient to convict; tried, to use the State's attorney's words, ' by all kinds of arguments,' but all to no purpose. To use the plaintiff's words, ' the State's attorney was a little obstinate,' and informed the plaintiff that he deemed the evidence ample for conviction, and that he should not *nol. pros.* the case, but should prosecute. . . . . Defendant always told plaintiff that he was innocent of the crime wherewith he was charged ; but plaintiff hadn't much doubt any of the time but that defendant was guilty ; and he was confirmed in his belief upon talking with some of the State witnesses ; but he pretended all the time to believe him innocent." . . . . . . .

Pursuant to his employment in this behalf, plaintiff went to Woodstock, before a bill was found, mainly, for the purpose of seeing what witnesses went before the grand jury on the defendant's case ; and he watched to see. The grand jury found a bill against the defendant ; and several times, that term, the plaintiff had talk with the State's attorney." . . . . . .

" The plaintiff went to West Hartford several times on this business, but pretended to be there on other and different business, and this to conceal his real business. He there talked with some of the State witnesses and other citizens, and made a general effort to create a sympathy there for the defendant ; said that defendant would get clear, and that they had better let him alone," &c. The plaintiff was not an attorney, nor even a friend of the defendant ; but the referee found that he " was earnest and active in the services aforesaid, and did all he could for the defendant." " When it was found that nothing could be done with the State's attorney, defendant applied for a continuance of his case, which was denied ; finally, rather than take a trial defendant forfeited his bonds."

*S. M. Pingree*, for the plaintiff.

*S. E. Pingree*, for the defendant.

A contract, having such an object and purpose, and to be performed by such methods, unquestionably contravenes public policy by impeding the cause of justice, and is void. Chitty on Cont. p.

674; Kent, 2, 467; *Badger* v. *Williams*, 1 D. Chip. 137; *Pingry* v. *Washburn*, 1 Aik. 264; *Spalding* v. *Preston*, 21 Vt. 9.

The opinion of the court was delivered by

VEAZEY, J. Chancellor KENT lays down the rule that the consideration of a contract must, in order to entitle the party to recover, " not only be valuable, but it must be a lawful consideration, and not repugnant to law, or sound policy, or good morals. *Ex turpi contractu actio non oritur ;* and no person even so far back as the feudal ages, was permitted by law to stipulate for iniquity." 2 Kent Com. *466.

In Smith on Contracts, page 141, the author says : " There is another remarkable instance of contracts falling under this class, namely, of illegality created by the rules of common law. It consists of contracts void because of having a tendency to obstruct the administration of justice." And he cites *Collins* v. *Blantern*, 2 Wils. 341; *Unwin* v. *Loper*, 1 M. & Gr. 747, E. C. L. R., vol. 39 ; *Kier* v. *Leeman*, 6 Ad. & E. 316, E. C. L. R., vol. 51.

There are numerous cases in the English and American reports, including those of Vermont, which illustrate the general rule that contracts are illegal when founded on a consideration *contra·bonos mores*, or against the principles of sound policy ; as where the consideration was the suppression of evidence in a criminal prosecution, *Badger* v. *Williams*, 1 D. Chip. 137 ; stifling a criminal prosecution, *Bailey* v. *Buck*, 11 Vt. 252 ; compounding of felonies or suppressing a criminal prosecution, *Hinesburgh* v. *Sumner*, 9 Vt. 23 ; *Bowen* v. *Buck*, 28 Vt. 308 ; sale of office, *Ferris* v. *Adams*, 23 Vt. 136 ; hired electioneering, *Nichols* v. *Mudgett*, 32 Vt. 546 ; " lobbying in the legislature," *Powers* v. *Skinner*, 34 Vt. 274. The law gives no countenance to an illegal contract.

Did the services of the plaintiff in this case come within the above rule ? The defendant had been bound up for adultery ; and the plaintiff's purpose was, first, to prevent an indictment ; not because he believed the defendant was innocent, because the

plaintiff had not much doubt of his guilt at any time, and he was confirmed in his belief of guilt after talking with the State witnesses.    Neither is there anything in the report to show that the plaintiff thought there were, or that there were in fact, any mitigating circumstances in the defendant's behalf, or any reasons existing why the law should not be enforced against him ; nothing to show that the State's attorney, or the State witnesses, or the public generally had any erroneous or extravagant views about the prosecution, or were disposed to be vindictive or oppressive therein, or had any ill-will towards the defendant.    The sole purpose of the plaintiff's employment seems to have been to obstruct the administration of justice, either by inducing the State's attorney to hold back in the discharge of his duty, or the State witnesses to so tone down their testimony as to defeat the finding of an indictment.    There is nothing in the report to indicate that the plaintiff or anybody else in that community felt called upon to interpose in the defendant's behalf in a friendly or neighborly way in the interests of justice or fair dealing.    The report impresses us with the idea that the defendant sought the plaintiff's assistance, not as that of an attorney or neighbor or friend, but because he wanted a sort of " fugler " to circumvent or obstruct the due administration of justice ;  and that both parties were indifferent as to the methods.    After having done what he could with the State's attorney and the State witnesses before the indictment, the plaintiff, after the indictment was found, was " very persistent in his effort to induce " the State's attorney to enter a *nolle prosequi.*    " He tried him on the score of friendly relations existing between them ; tried him by attempting to make him believe that the evidence was not sufficient to convict ; tried him, to use the State's attorney's own words, ' by using all kinds of arguments.' "    In *State* v. *Keyes,* 8 Vt. 57, it was held to be an indictable offence to *attempt* to induce a witness, on the part of the State, not to attend a public prosecution, even where such witness had not been served with a subpœna, but was known to be a material witness that was relied on.    Chitty in his work on Contracts, vol. II., p. 998, 11th Am. Ed. says :  " An agreement, the

Barron *v*. Tucker.

natural effect of which is, to induce a public officer to neglect his duty, is invalid "; and cites numerous cases.

The plaintiff's services in this case were unavailing to obstruct the administration of justice; but such was their purpose and natural tendency. They, therefore, do not constitute a legal consideration of a contract.

Although this case comes, as we think, under familiar principles of law, it is yet somewhat peculiar and novel in its facts; and in this decision we do not intend to trench upon the rights of respondents, or of their friends and counsel in their behalf, in the use of all legitimate means of defence. The evident purpose of the plaintiff, and the necessary tendency of his services to obstruct justice, especially indicated by his persistently besetting the prosecuting officer, after the latter had become familiar with the facts, and the grand jury had found an indictment, distinguish the plaintiff's claim, and taint it with illegality.

Judgment affirmed.