J. J. AYCOCK v. J. E. GILL.

(Filed 5 April, 1922.)

1. **Criminal Actions—Contracts—Illegal Consideration—Stifle Prosecution—Bills and Notes.**

All contracts made with the prosecutor in a criminal action founded upon agreements to compound felonies or stifle prosecutions of any kind are contrary to public policy or the laws of the State, and are unenforceable whether obtained by duress or otherwise.

2. **Same—Compounding a Felony—Less Offense.**

While the compounding or condoning of offenses less than a felony is not indictable, a consideration given for services to be rendered which tend to obstruct the course of justice is contrary to the administration of the law, which the courts will regard as illegal, and will not enforce.

3. **Same—False Pretense.**

Where the prosecutor, in a criminal action for a false pretense, has agreed with the uncle of the defendant that upon the consideration of a note given by the uncle and the defendant for the amount of the loss, the prosecutor would state to the court that his matter with the defendant had been settled, and that he would request the court to be as lenient as

possible with the defendant: *Held*, the consideration for the note was illegal, having the tendency to diminish the interest of the prosecutor, or totally withdraw it from the further prosecution of the defendant, contrary to the prosecutor's duty in the vindication of public justice.

APPEAL by defendant from *Daniels, J.*, at the October Special Term, 1921, of WAYNE.

This action was brought for the cancellation of a promissory note for $400, made by the plaintiff to the defendant, upon the ground of duress, and because it was given upon a promise to suppress a criminal prosecution, or to mitigate the punishment of the plaintiff's nephew for the crime of false pretense.

The court gave judgment for the plaintiff, upon admissions in the answer, holding that the note was not enforceable, but was "invalid, null, and void," as against public policy, and ordered that it be delivered up by the defendant to be canceled.

Plaintiff's nephew, J. D. Hinnant, had been arrested under a warrant of a justice of the peace, issued at the request of the defendant, for false pretense. The answer admitted that at the request of the deputy sheriff and Hinnant, J. E. Gill drove Hinnant and deputy sheriff and police officer from Zebulon, N. C., to Fremont, N. C., in order that Hinnant might arrange for his bond and not be committed to jail, Gill stating to Hinnant and the deputy sheriff that he would charge the sum of $20 for the round trip; that arriving at Fremont, Hinnant talked to his uncle, the plaintiff, J. J. Aycock, and to another uncle named Aycock, whose initials this defendant does not now recall; that J. J. Aycock informed the sheriff and the defendant Gill that he had raised J. D. Hinnant and was very much concerned about him; that the plaintiff J. J. Aycock asked the defendant Gill would he release his nephew, Hinnant, if he (the said Aycock) would sign a note guaranteeing the payment of the debt that Hinnant owed the defendant Gill, which then amounted, including the expense of the automobile trip, to $398.95; that the defendant Gill informed the plaintiff Aycock that he could not agree to discharge his nephew, Hinnant, but that if the plaintiff Aycock desired to guarantee the payment of the debt, that he, the said Gill, would state to the court that the same had been settled, and would request the court to be as lenient as possible with said Hinnant; that after some discussion the plaintiff Aycock signed a note, together with said Hinnant, payable to the order of the defendant J. E. Gill, on 1. December, 1920, for $398.95, with interest from its date, 27 July, 1920.

The defendant appealed from the judgment.

*Langston, Allen & Taylor for plaintiff.*
*J. Faison Thomson and W. G. Massey for defendant.*

AYCOCK *v.* GILL.

WALKER, J. The defendant, it is true, denied that there was any duress employed in obtaining the note in question, or that the consideration of it was against public policy, and also denied that he had done anything to stifle a criminal prosecution, and in support of this general denial, he stated what was done, which is above set forth. It will not be necessary to inquire if there was any legal duress exercised by the defendant to procure the note, as if the note is void, because the consideration of it is illegal, being against public policy, it is not enforceable whether obtained by duress or not.

The cases in this Court have settled the general principle involved in this case. *Blythe v. Lovinggood,* 24 N. C., 20; *Garner v. Qualls,* 49 N. C., 223; *Vanover v. Thompson,* 49 N. C., 485; *Lindsey v. Smith,* 78 N. C., 328; *Corbett v. Clute,* 137 N. C., 546. In *Thompson v. Whitman,* 49 N. C., 48, it is decided that the concealment of a felony is an indictable offense, and that the offense is greatly aggravated by compounding the felony, that is, "by an agreement not to prosecute or make known what has come to the knowledge of the party." In offenses less than felony, this compounding or concealment is not indictable, but it is nevertheless against the policy of the law and the due course of justice, and a court of law will not lend its aid to enforce any such contract or agreement. In *Garner v. Qualls,* 49 N. C., 223, the same doctrine is held, the Court declaring that no executory contract, the consideration of which is *contra bonos mores,* or against the public policy, or the laws of the State, can be enforced in a court of justice. The consideration there was the compounding or suppressing, a prosecution for an alleged forgery. The bond was declared void, although the act may never have been, in the view of the law, a forgery. In *Ingram v. Ingram,* 49 N. C., 188, the Court declared that an agreement among persons interested in an estate, not to bid against each other at the administrator's sale, is void, as being against the public policy. It may be now, therefore, pronounced a settled principle "that all contracts founded upon agreements to compound felonies, or to stifle prosecutions of any kind," are void, and cannot be enforced. The Court said, by *Pearson, J.,* in *Thompson v. Whitman, supra:* "His Honor was of opinion that the consideration of the bond sued on was not against public justice. In this there is error. According to the view we take of the case, Taylor was not at liberty to take care of his private interest by accepting an indemnity, and thereby depriving the State of an active prosecutor; which is one of the means relied on for the conviction of offenders. The testimony of Taylor, when contrasted with that of Martin before the committing magistrates, in reference to the same transaction, suggests the fear that this *douceur* had taken effect. When the person directly interested is appeased before the trial, he is under

strong temptation to favor the offender." There are many cases decided by this Court to like effect as those already cited, which it is not necessary to consider, as they all settle the principle above stated in the same way.

The defendant contends that his admissions do not bring this case within the principle above stated, as he did not agree to stifle a criminal prosecution or to do anything contrary to the public policy, but only agreed, as the consideration for the note given by the plaintiff to him, that he would intercede with the court in behalf of the plaintiff's nephew and induce it to be lenient with him. But we are of opinion that even that consideration was illegal, and rendered the note void. It has been held that agreements to use influence, or tending to encourage the use of influence, with the prosecuting attorney in respect to criminal prosecutions is illegal. 9 Cyc., 502, and note 33, where the cases will be found. *Merwin v. Huntington,* 2 Conn., 209; *Rhodes v. Neal,* 64 Ga., 704; *Shaw v. Reed,* 30 Me., 105; *Wildey v. Collier,* 7 Md., 273; *Ormerod v. Dearman,* 100 Pa. St., 561; *Barron v. Tucker,* 53 Vt., 338; *Wight v. Rindskopf,* 43 Wis., 344. Bonds or promises in consideration of "ease or favor" to prisoners held under criminal process are illegal. The case of *Buck v. Bank,* 27 Mich., 293, is so much like this case, and the decision of it was made by a Court of such eminence, the opinion being by *Judge Cooley,* that we may well rest our decision of this case upon it, as it covers fully the questions we have here to determine. The syllabus of that case thus states the substance of the decision: "B. having robbed the plaintiff, the defendant, a relative of B.'s, was induced to execute to plaintiff promissory notes in consideration of a promise by the plaintiff to petition the court to mitigate the punishment of B.: *Held,* that the notes were against public policy, and not enforceable by the plaintiff." After reciting the evil tendencies of a contrary rule, *Judge Cooley* says: "If the real inducement to the defendants to give the notes was the assurance of the officers that they would sign, or be more likely to sign, a petition in favor of R. M. Buck, then it is obvious that the transaction, stripped of whatever, in a legal point of view, was immaterial, was simply this: one party was to give a pecuniary consideration, and the equivalent was that another would sign, or promise to sign, or be more likely to sign, a petition for the mitigation of a criminal punishment. It is too plain for argument that such a transaction is not only wanting in the requisites of a legal contract, but that in its tendency it is immoral and pernicious. . . . As consequences can only be precluded by an inflexible rule of law, that services or assistance of any kind or any description, calculated or intended to influence the action of a court, except in the open and public modes of argument and evidence which the law provides for and allows, can never be a legal

consideration for the promise of a pecuniary return. We do not stop to point out that assistance from pecuniary motives to lighten the punishment of a criminal is the same in nature and only different in degree from assistance from the like motives to shield him from punishment entirely. We prefer to put this case entirely upon the tendency such an understanding as the defendants set up must have to encourage deception of the judge, and to mislead him in the facts upon which his judicial action should be based. . . . The highest considerations of public policy demand that the pecuniary interests of individuals should not be recognized as legitimate motives to influence the action of official persons, and that in the case of courts most especially, every avenue should be carefully guarded against the intrusion of such motives. Caution is especially required in the case of parties injured by crime, who apply to avert or mitigate the penalty, because the court would be likely to give exceptional weight to their suggestions."

It was said in *Lindsay v. Smith,* 78 N. C., at p. 331, to be a matter of the gravest public concern that all infractions of the criminal law should be detected and punished. A party cannot take care of his private interests by depriving the State of a witness or an active prosecutor, which is the means relied on for the conviction of offenders; much less can he pollute the very fountains of criminal justice by suppressing an indictment already instituted against him. And it has been said that anything inconsistent with the impartial course of justice will not be upheld; even if the intent of the parties is not fraudulent, and although no evil resulted in the particular case. 1 Mod. Amer. Law, p. 125. It is the temptation to do wrong where money is to be received for the service, that does the harm, as it is likely to prevent, obstruct, or prejudice the due administration of justice. In this case it was not purely voluntary and gratuitous service that was to be performed, but it was to be done under the stimulus of a consideration, the promisor should receive for mitigating the punishment.

It would seem that in this case the object of the defendant, if not his sole object, was to collect his claim against Hinnant through resort to a criminal prosecution, so that he might later, by the use of duress, induce the plaintiff to come to the relief of his nephew, who was being prosecuted, as he did by giving the note, upon the illegal promise that J. E. Gill would induce the court to act with leniency toward the nephew.

If the defendant J. E. Gill had his debt against Hinnant secured, and had promised as a consideration therefor that he would use his influence to mitigate the punishment of Hinnant, the result would be that his interest in the further prosecution of the case would be greatly diminished, if not totally withdrawn, and he would cease to fulfill his duty in the vindication of public justice, or the enforcement of the law.

The State, as said in *Thompson v. Whitman, supra,* would thereby be "deprived of an active prosecutor," and, instead, would be met by passive indifference.

As was said in a somewhat similar case: "Although this case comes, as we think, under familiar principles of law, it is yet somewhat peculiar and novel in its facts; and in this decision we do not intend to trench upon the rights of respondents, or their friends and counsel in their behalf, in the use of all legitimate means of defense." *Barron v. Tucker,* 53 Vt., 338.

Our conclusion is that the court was right in the judgment it rendered upon the pleadings.

Affirmed.