WILHELM *v.* KING AUTO FINANCE CO.

1. Cancellation of Instruments—Duress—Mortgages—Husband and Wife—Public Policy—Contracts.

Where no fraud or deceit was practiced on married woman to induce her to execute mortgage on her home to make restitution for money obtained by her husband under false pretenses, she is not entitled to have it canceled on ground of duress, nor, under circumstances, was acceptance of restitution improper, although it was accompanied by promise of defendant's attorney to use his influence to have criminal proceedings against her husband dropped, and they were subsequently dismissed.

2. Same—Equity—Tender.

Where, at time married woman executed mortgage on her home to make restitution for money obtained by her husband under false pretenses, she obtained possession of chattel mortgage

notes signed by herself and husband, she is not equitably entitled to have said mortgage canceled, in absence of tender of said notes.

McDONALD, POTTER, and SHARPE, JJ., dissenting.

Appeal from Wayne; Campbell (Allan), J. Submitted April 15, 1932. (Docket No. 136, Calendar No. 36,465.) Decided September 16, 1932.

Bill by Eleanor Wilhelm against King Auto Finance Company, a Michigan corporation, and others to cancel a real estate mortgage. Bill dismissed. Plaintiff appeals. Affirmed.

*Berger & Berger,* for plaintiff.

*George W.* and *Clifford A. John* (*William Van Dyke,* of counsel), for defendants.

McDONALD, J. (*dissenting*). This bill was filed to secure the cancellation and discharge of a real estate mortgage on the ground that it was given under circumstances that constitute duress, or, if not duress, under an agreement that renders it illegal and void.

The undisputed facts are that the defendants caused the arrest of the plaintiff's husband, Arthur Wilhelm, on a charge of obtaining money under false pretenses. After he had been confined in jail for 55 days, a settlement was made in which the plaintiff gave the defendant, King Auto Finance Company, her note for $16,000 secured by a mortgage on her home in the city of Hamtramck. When the settlement was completed, Wilhelm was released, and a few days later, on motion of the prosecuting attorney, the criminal proceedings were dismissed by order of the circuit judge.

The disputed facts relate to an alleged agreement in which the plaintiff claims she was promised, as an inducement for giving the mortgage, that her husband would be released from jail and further prosecution would be stifled. The defendants deny that they made such a promise, but admit they agreed to use their influence with the prosecuting attorney to secure his release and to stop the criminal proceedings.

On the hearing the circuit judge found that the plaintiff was not entitled to the relief prayed for, and entered a decree dismissing her bill. She has appealed.

The issue as to the facts is plain. The plaintiff says that she gave the mortgage because of a definite promise from Mr. John, defendants' attorney, who conducted the negotiations for them, that he would secure the release of her husband and have the criminal proceedings against him dismissed. If the plaintiff's version of the transaction is true, she is entitled to have the mortgage canceled and discharged of record. *Buck* v. *First National Bank,* 27 Mich. 293; *Wisner* v. *Bardwell,* 38 Mich. 278; *Meech* v. *Lee,* 82 Mich. 274; *Miller* v. *Minor Lumber Co.,* 98 Mich. 163 (39 Am. St. Rep. 524); *Benedict* v. *Roome,* 106 Mich. 378; *Koons* v. *Vauconsant,* 129 Mich. 260 (95 Am. St. Rep. 438); *National Surety Co.* v. *McLeod,* 240 Mich. 360.

The defendants' version of the transaction differs from that of the plaintiff only as to the extent of the promise. It is their claim that Mr. John, who was acting for them, did not promise the plaintiff to secure her husband's release and to get the criminal proceedings dismissed; but that he did promise to use his influence to bring about that result.

Mr. Trombley, the assistant prosecuting attorney, testified that very shortly after Arthur Wilhelm

was arrested Mr. John inquired of him if the prosecuting attorney would consent to drop the criminal proceedings if a settlement was made. He told him "to go ahead and make the negotiation and if they were successful notify the office and have Mr. Beecher, make a request to the circuit court asking these proceedings be dropped." Mr. Beecher was an officer of the defendant company.

The fact that Mr. John made this inquiry of the assistant prosecuting attorney indicates that he intended to use the information in negotiating a settlement. He did use it. When asked if they were going to get Wilhelm released, he said: "Why, I have every reason to believe that is going to happen; I believe that it will, but I will call Trombley." That his belief in being able to get him released was well founded is shown by the fact that immediately after the settlement was completed he telephoned Trombley, and Wilhelm was released at once.

But whichever version of the transaction we accept, there is no doubt that the plaintiff executed the mortgage in question with the understanding and in the belief that it would secure her husband's release from jail and stop the criminal proceedings pending against him. Whether she got that understanding from defendants' positive promise to bring it about or from their promise to use their influence to that end does not matter. The legal effect is the same. The agreement that Mr. John would use his influence to get the officers to release Wilhelm from confinement in the jail and from further prosecution was illegal and furnished no consideration for the mortgage.

"It has been held that agreements to use influence, or tending to encourage the use of influence,

with the prosecuting attorney in respect to criminal prosecutions are illegal.'' *Aycock* v. *Gill,* 183 N. C. 271 (111 S. E. 342, 24 A. L. R. 1449), and cases cited.

A similar agreement was involved in *Buck* v. *First National Bank, supra.* In that case a party had robbed the bank and was under arrest charged with the crime. Certain relatives gave their promissory notes to make the bank good on its loss. In an action on the notes these relatives claimed that they were void because given in consideration of a promise that the accused would not be prosecuted. The bank denied that such was the consideration, but admitted it had agreed to petition the court for leniency in sentence. Speaking strongly in condemnation of such an agreement, Mr. Justice COOLEY, writing for the court, said:

''One party was to give a pecuniary consideration, and the equivalent was, that another would sign, or promise to sign, or be more likely to sign, a petition for the mitigation of a criminal punishment. It is too plain for argument that such a transaction is not only wanting in the requisites of a legal contract, but that in its tendency it is immoral and pernicious.''

Other cases in point might be cited from this court and from other jurisdictions, but to do so would unnecessarily extend this opinion. The rule announced in *Buck* v. *First National Bank* has been consistently followed by our court, and is decisive of the instant case.

In disposing of the issue the trial court correctly determined the facts, but erred in his application of the law. The plaintiff is entitled to the relief prayed for in her bill,

The decree should be reversed, and one entered here in accordance with this opinion. The plaintiff should have costs of both courts.

POTTER and SHARPE, JJ., concurred with McDONALD, J.

NORTH, J. I think the decree entered in the circuit court should be affirmed, and that sufficient reasons therefor are set forth in the following portion of the opinion filed by the circuit judge:

"The court is of the opinion that the transaction in question is not subject to being voided for the reason that the defendants' mortgage was obtained by duress. There does not seem to the court to have been any bad faith in what was done with relation to Wilhelm. He undoubtedly was guilty, and he and his family undoubtedly sought to make restitution with a view to having the proceedings dropped. The acceptance of restitution was in no sense improper, and no fraud or deceit was practiced upon the court or upon the court officials. The judge and the prosecutor both knew what had been done. If, in their judgment, it was proper to drop the proceedings, the public has been protected, as far as the law contemplates. If the law were as contended for by the plaintiff, it would be impossible for any injured and defrauded plaintiff to make a settlement which could not be subsequently repudiated in a proceeding like this. I do not believe that justice demands such a rule.

"There is another reason why Eleanor Wilhelm's bill lacks equity. She herself was a party, as indorser, on the original obligations. In making a new mortgage, she was securing a discharge of her own previous obligations. It is probable that she might have defended in an action on the original obligations by pleading coverture, but the fact remains there was a consideration moving to her in their extinguishment."

To the above might be added that notwithstanding plaintiff through counsel secured possession of the notes of herself and husband in lieu of which the mortgage here in suit was given, neither at the time of filing her bill of complaint nor at any time since has she tendered a return of all of the notes thus secured by her from the defendants. The least that could be asked of plaintiff as a condition of granting her equitable relief would be the return to defendants of all of the chattel mortgage notes which she secured from them by giving the mortgage which she now seeks to have canceled. Because of her failure to do equity she is denied the relief sought, and the decree entered in the circuit court is affirmed, with costs to appellees.

CLARK, C. J., and FEAD, WIEST, and BUTZEL, JJ., concurred with NORTH, J.